## No. 7817.

MARCELITE MARTINEZ, WIDOW LOUIS BERLIER, ET AL. VS. SUCCESSION OF ADOLPHE VIVES.

| 32 | 305 |
|----|-----|
| 51 | 493 |
| 32 | 305 |
| 116 | 222 |

| 32 | 305 |
|----|-----|
| 125 | 887 |

The death of an absentee who is less than one hundred years old is never presumed. It must be clearly shown.

The testimony as to the death of an absentee, of a witness whose only information on the subject is derived from letters which were not produced, and the absence of which was not accounted for, and from the fact that the family of the absentee had acted on the belief of his death, when the acts implying the belief are not mentioned, is not admissible in evidence.

The testimony of one witness, introduced without objection, that the person suing as the widow of a certain decedent was married to him is sufficient to prove the marriage.

The contract of an attorney with his client to receive a contingent fee of ten per cent on the amount recovered is a valid contract.

An attorney who is entitled to a certain commission on the amount recovered by him, which amount is evidenced by and embraced in a judgment, has a sufficient interest in the judgment to sue for its full revival.

The suit to revive a judgment is properly brought in the court which is the forced heir and legal successor of the court which rendered the judgment.

APPEAL from the Fifth Judicial District Court, parish of Iberville. McVea, J.

E. B. Talbot for plaintiffs and appellees :

First—A lawyer may legally stipulate for his fee a certain per centage of the sum he may recover.

Second—It is contended that the court that rendered the judgment of revival is not the same court that rendered the original judgment. The Fifth District Court of Iberville is at present the same as the Fifth District Court that existed prior to the constitution of 1868, divested only of some of its jurisdiction. In La Chambre vs. Cole, 30 An. p. 961, we think your Honors have settled this question. Chapman, Ex., vs. Nelson, et al. is relied upon to sustain the point raised.

Barrow & Pope for defendant and appellant :

First—The death of Berlier is not shown sufficiently. If Berlier be dead, it was easy to prove it.

The evidence of Rils and Talbot on this subject was improperly admitted ; the bill of exceptions should be sustained. R. p. 9. It will be seen the fact of Berlier's death is attempted to be proved by hearsay, all of which was objected to. Also, by general belief. Certainly, general reputation makes no proof ; common reputation is only evidence to prove : 1, character ; 2, pedigree ; 3, prescriptive rights, and matters of public notoriety. Starke, 31.

Neither the marriage of Marcelite with Berlier, or Berlier's death, being

20

established, it follows that no interest on her part to have the judg-ment revived is shown.

Second—A lawyer cannot validly contract for a certain proportion of the object sued for by heirs. 2 M. 281 ; 7 L. 207 ; 8 L. 254.

Third—A lawyer's interest in a judgment being merely to collect it in order to earn his fees, is not such an interest as entitles him to sue to revive the judgment. C. C. 3547.

Fourth—Only the court that delivered the judgment has jurisdiction of a suit to revive it. 31 A. 346.

The opinion of the court was delivered by

DeBlanc, J. On the *11th of May, 1866,* a judgment was rendered by the Fifth District Court of the State, at a session held in the parish of Iberville, in favor of Louis Berlier, and against Adolphe Vives, for fifteen hundred and fifty dollars, in principal. That judgment was obtained by Messrs. Talbot & Petit, attorneys-at-law, whose services were engaged on condition that they would receive no other fee but ten per cent upon any amount which they might collect from Vives.

The present suit was filed on the *9th of May, 1876.* It was brought by Marcelite Martinez, styling herself the widow of Louis Berlier, and by Messrs. Talbot & Petit, who claim that they have an interest in the judgment already referred to, and ask, with the widow—that it be re-vived, in accordance with the 3547th article of the Code.

In answer, defendant denies each and every allegation contained in their petition, and—specially—that they are the owners of the judgment sought to be revived. We have, then, to ascertain :

1. Whether it was shown, by legal and sufficient evidence, that Berlier is dead.

2. If dead, whether he was married to Marcelite Martinez.

3. Whether Talbot & Petit have—in the judgment—an interest which would justify its revival on their application, and

4. Whether this action was brought in the court by which said judgment was rendered.

I.

Is the fact of Berlier's death legally established ? Two witnesses testified, in substance, that it was generally *understood,* by his friends, relations and those who knew him in Iberville, that he is dead. One of the witnesses derived his information from Berlier's brothers and sisters, and *from letters* shown to him ; the other swore that the members of the family *have acted* on that belief.

To these declarations, defendant's counsel objected, on the ground that they are, not only mere hearsay evidence, but—besides—based on

the hearsay of other persons, and—consequently—not the best evidence which, from the nature of the case, must be supposed to exist and to be within the control of those who rely on those declarations.

That objection was overruled, and defendant's counsel excepted.

What became of the letters shown to one of the witnesses? Have they been lost or destroyed, and if not, has an effort been made to find and procure them? What were their dates and contents? To and by whom were they written? Did those who wrote know, or had they heard that Berlier was dead? The family, it is said, acted on that belief, but how? Did they go into mourning, or otherwise evince their belief in the imparted information? The letters referred to should have been produced or accounted for, and it should have been shown—by more than the expression of an opinion—in what way the family acted upon that information.

The declarations objected to show themselves that there was, within the parties' control, evidence—which, whether admissible or not, would—legally—have been, under the circumstances, of a higher degree and more substantial character than that which was adduced.

Berlier was a resident of, married in, left, the parish of Iberville, went to France and there—it is believed—died—but when? Not a single date is given.

In "Hayes vs. Berwick," this court said : " By a maxim consecrated by the best authorities, every absentee, whose death is not clearly and precisely established, is presumed to live until the age of one hundred years ; that is to say, the most remote period of the ordinary life of a man."

2 M. 140 ; Denisard, 13, *verbo* " Absents."

In " Owens vs. Mitchell," speaking of collaterals, the court said : that they " must always prove the death of ascendants by evidence, or show that one hundred years elapsed since their birth ; in which case death is presumed, *not before.*" That maxim was then and is now embodied in our legislation.

C. C. 70 (71) ; 5 N. S. 668.

In the last of the decisions which we have cited, that doctrine is— we think—too broadly stated. There are occurrences—as a wreck, a battle, or the like—which would authorize a court in presuming the death of one, known to have been exposed to the perils of either ; but such a presumption "must be weighty, precise and consistent." The ascertained facts on which it is rested, must draw with them, as a necessary consequence, the unascertained facts sought to be established, "and exclude every other rational conclusion."

Here—howsoever credible are the witnesses who testified on the trial—they repeated but the unsworn statements read in letters which

might have been produced, or heard from others, some of whom could have been regularly summoned and regularly examined—and we cannot, relying on those indefinite statements, presume a fact which—if it happened—they could have so easily verified.

The objection raised by defendant's counsel should have been sustained. Unless the plea involve a negative, those who affirm and claim, must prove.

H. D. p.

## II.

Was Louis Berlier married to Marcelite Martinez? Marriage may be proved by cohabitation, general reputation, and—indeed—by any species of evidence not prohibited by law, and which does not presuppose another and higher species; and Mr. Talbot, whose testimony was not objected to, did swear that Berlier had married a Miss Martinez, and—we entertain no doubt—had reference to Marcelite, who—as his widow—instituted these proceedings—and whose quality as such was not specially denied.

3 L. 33 ; 5 A. 430.

## III.

Can the judgment be revived on the application of Messrs. Talbot & Petit? The agreement entered into between them and their client is not—as contended—prohibited by law : it is that, as a compensation for their services in collecting the note placed in their hands, and on which the judgment was obtained, they were to receive a commission of ten per cent upon any amount which they might collect, and—in case of failure—to get no fee. In " Flower et al. vs. O'Connor," this court expressly recognized the validity of a similar agreement.

7 L. 207.

Under that stipulation, can Messrs. Talbot & Petit be considered—in the sense of article 3547 of the Code—as parties interested in the judgment sought to be revived ? Their fee—it is manifest—depends upon the collection of the claim evidenced by the judgment, and that collection—it is as manifest—depends upon the revival of the judgment ; and—though their fee is not yet exigible—they could have taken, as they did, those steps which were indispensable to prevent the prescription of the judgment and the destruction of their right.

The agreement referred to does not—it is true—constitute a transfer of any part of the judgment itself, nor is the promised commission to be measured to the uncollected amount of the judgment. That commission can, however, be realized but by the enforcement of, and from the judgment, and the suing attorneys are actually interested in keeping it alive.

To what extent, it may be asked, can they keep it alive? Is it to exclusively the extent of their commission, or in its entirety? Their right is not attached to any definite fraction of the judgment, but is linked to, and inseparable from it as an entirety, and even if a judgment can be partially revived, their interest and their right—in this instance—is to revive as a whole that from every collected fraction of which their commission is to accrue.

## IV.

Was the action to revive brought in the proper jurisdiction? The law provides that such an action must be brought in the court which rendered the judgment. Here, what are the facts? That judgment was rendered by the Fifth District Court of the State, and the proceeding to revive it filed in a court which—to a certain extent—is a mere continuation of the first, or at least its forced heir and immediate successor, as regards said judgment, its revival and execution.

As well before, as after the adoption of the constitution of 1868, this case—either during its pendency or since its final determination—has ever been in but one and the identical jurisdiction, one which—as to other matters—was different from what it now is, but which, as to this controversy, the amount therein involved, the character of the demand and the parties, has never been changed.

In "Chapman, Executrix, vs. Nelson et al." we held that plaintiff's demand could not be entertained by the Fourth District Court of New Orleans, for the reason that the suit brought to obtain the judgment sought to be revived, had not been originally brought in the Seventh District Court, and that—though the act of 1872 provides for the transfer—from that court to the Fourth District Court—of all suits and proceedings, whether determined or not, its provisions are expressly limited to suits and proceedings heretofore *brought in the Seventh District Court.*

In this case, the record of Berlier's suit and his judgment—which are now where they have ever been—were, by operation of law, constructively transferred from and to a jurisdiction which existed before the constitution of 1868, and which was either continued or revived by that constitution, and plaintiffs' action was properly brought in that jurisdiction.

It is, therefore, ordered, adjudged and decreed that—in so far as concerns Marcelite Martinez—her demand is rejected at her costs in both courts, as in case of nonsuit; and—as thus amended—the judgment appealed from is affirmed—the costs in both courts, except those incurred by Marcelite Martinez, to be paid by defendant.